UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **GEORGE ANSARA,**<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>**VANCE MCCORMICK, MICHAEL LESLIE, THERESA LESLIE, and STEVEN WINTERS,**<br><br>Defendants/Counter-Plaintiffs. | **2:24-CV-12352-TGB-APP**<br><br>HON. TERRENCE G. BERG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (ECF NO. 12)** |

George Ansara has filed this lawsuit against several of his subdivision neighbors for violating the federal Fair Housing Act, 42 U.S.C. § 3601 et seq., and intentional infliction of emotional distress under state law. ECF No. 1, PageID.8–15. Defendants removed the action to federal court and filed counterclaims against Plaintiff for violation of the "Declaration of Restrictions" applicable to estates on the subdivision and intentional infliction of emotional distress. ECF No. 3, PageID.56–61. After the close of discovery, Defendants filed a Motion to Dismiss. ECF No. 12. Plaintiff has not filed a dispositive motion. The Court held a hearing on the motion on August 17, 2026.

For the following reasons, Defendants' Motion will be **GRANTED IN PART** and **DENIED IN PART**. The remaining state law claim and counterclaims will be **REMANDED** to the Oakland County Circuit Court.

## I. BACKGROUND

George Ansara was born in the United States, but his family has origins in Lebanon. Compl., ECF No. 1, ¶ 13. Ansara states that he is Christian, although many people believe he is Muslim. *Id.* at ¶ 14. Ansara purchased a house in the Northridge Estates Subdivision in Wixom, Michigan on July 1, 2022, and moved in shortly thereafter. *Id.* at ¶ 12.

The Northridge Estates Subdivision has a Homeowners' Association ("HOA"). Defendant Vance McCormick is a former President and member of the Board of Directors ("Board") of the subdivision's HOA, *id.* at ¶ 6, Defendant Michael Leslie is a former Member-at-Large of the Board, *id.* at ¶ 7, Defendant Theresa Leslie is a member of the HOA, *id.* at ¶ 8, and Defendant Winters is a member of the HOA, a former member of the Board, *id.* at ¶ 10, and a member of the Zoning Board of Appeals of the City of Wixom, *id.* at ¶ 45. Defendants have all lived in the subdivision for decades. *Id.* at ¶ 17. The Leslies live next door to Ansara. *Id.* at ¶ 15. The other defendants live nearby. *Id.* at ¶ 16. Plaintiff does not bring suit against the HOA itself.

Ansara alleges that Defendants "have made life difficult in the subdivision for newly arrived residents of the subdivision who are of a different race, national origin, or whose religion differs from that of Defendants." *Id.* at ¶ 19. Most residents of the subdivision are Caucasian people of European origin. *Id.* at ¶ 18. As examples of the Defendants' discriminatory behavior, Ansara alleges that the Leslies "have referred

to African-American people as 'n******,'" *id.* at ¶ 20, McCormick has referred to people of Middle Eastern descent as "damn Arabs" and to a Jewish neighbor as a "damn Jew boy," *id.* at ¶ 21, the Defendants referred to a resident of Asian descent as "Ling Ling" and her baby as "Eggroll," allegedly causing the family to move out, *id.* at ¶ 26, and Theresa Leslie took unwanted photographs of landscapers, *id.* at ¶ 36.[1]

As to Ansara himself, Ansara alleges that Defendants have "all treated [him] differently than other neighbors due to [his] race, national origin and presumed religion." *Id.* at ¶ 22. He alleges in particular that (1) Defendants have made "derogatory comments to neighbors about Ansara" and "deliberately mispronounced Ansara's last name in a derogatory tone of voice," *id.* at ¶¶ 28–29; (2) Defendants have treated him differently from other neighbors at multiple HOA meetings in October 2022, May 2023, October 2023, and May 2024, by making him "feel so uncomfortable," *id.* at ¶ 38, cutting off his presentation of suggestions after a few minutes, *id.* at ¶ 31, preventing him from distributing his suggested list of improvements to other neighbors before a meeting until after he hired an attorney, *id.* at ¶¶ 33–34, and preventing his attorney from speaking on his behalf and attending HOA meetings, *id.* at ¶¶ 38–39; (3) Defendants have treated him differently

[1] That allegation is underdeveloped in the Complaint, but Ansara stated in a later Declaration that: "I think she was trying to take photographs in case some of the workers were illegally working in the U.S." Declaration of George Ansara ("Ansara Decl."), ECF No. 16, PageID.184.

from other neighbors by demanding to see the title for his boat docked at his house, *id.* at ¶ 35; (4) Defendants have sabotaged his irrigation system for his landscaping, *id.* at ¶ 37; and (5) Defendants have made police reports against Ansara that were false or about trivial incidents, *id.* at ¶ 40, as well as a report to the City of Wixom about an alleged zoning issue regarding his concrete pad and gazebo although others with similar structures have not been reported, *id.* at ¶¶ 42–43.

Ansara alleges he has suffered emotional distress as a result of the combined effects of Defendants' conduct, including in the form of "(a) lost sleep, (b) chronic agitation, (c) irritability, and (d) emotional distress," *id.* at ¶ 46, that he has been seeing a therapist weekly as a result, *id.* at ¶ 48, and that he has been deprived the "full enjoyment of his rights as a property owner in the subdivision, as well as his rights as a member of the HOA," *id.* at ¶ 47.

About two years after moving into the subdivision, on July 23, 2024, Ansara filed a complaint in state court against Defendants for violation of the federal Fair Housing Act and intentional infliction of emotional distress under state law, seeking injunctive and monetary relief. ECF No. 1. Defendants removed the action to federal court (ECF No. 1), filed counterclaims against Ansara for violation of the HOA's "Declaration of Restrictions" and state law intentional infliction of emotional distress

(ECF No. 3),[2] and filed the pending Motion to Dismiss (ECF No. 12), which is fully briefed (ECF Nos. 16, 17, & 18).

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating whether a plaintiff has set forth a plausible claim, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 456 (6th Cir. 2011) (citation modified). "[M]ere conclusions," however, "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 668. Instead, a plaintiff must

---

[2] Plaintiff has not filed a dispositive motion regarding such counterclaims. Defendants/Counter-Plaintiffs seek injunctive relief ordering Ansara to remove the "huge white plastic privacy fence around his lot [erected] without having obtained or even sought approval of the Architectural Control Committee [as required by the Declaration] . . . with the intention of blocking the Leslies' view of the lake." Counter-Compl., ECF No. 3, PageID.59, ¶¶ 13–14. They also seek monetary relief for Ansara's allegedly menacing or disruptive behavior such as damaging Defendants' mailboxes or placing trash or dog feces on their lawns. *Id.* at ¶ 18.

plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* Finally, consideration of a motion to dismiss under Rule 12(b)(6) is generally confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008).[3]

## III. DISCUSSION

### A. Failure to Seek Concurrence

As a preliminary matter, Plaintiff complains that Defendants failed to seek concurrence before filing the pending Motion to Dismiss, in violation of E.D. Mich. LR 7.1(a). Plaintiff contends that "a real meet and confer would have rendered moot a portion of Defendants' arguments" that no medical evidence is part of the record, as the medical records were inadvertently omitted from the document production and have since been produced. Plaintiff seeks sanctions in the form of striking the pending motion without an opportunity to refile.

Defendants argue that "[s]triking the motion without an opportunity to refile is drastic, when the deadline for dispositive motion was clear such that Plaintiffs expected such a motion." As a concession,

---

[3] Although their motion was styled as a combined motion for summary judgment and to dismiss, in their Reply Defendants stated they were withdrawing the Rule 56/summary judgment aspect of the motion and electing to proceed only under Rule 12(b)(6). *See* ECF No. 18, PageID.235.

Defendants voluntarily "withdr[e]w the Rule 56 aspect of the motion [to] proceed only under 12(b)(6)" given the late production of medical records in response to the pending motion.

That Plaintiff may have expected Defendants to file this motion carries no weight in determining whether the Rule should be enforced, because the purpose of LR 7.1 is to enable the movant to "ascertain before filing whether the contemplated motion . . . will be opposed," and for the parties to engage in an "interactive process aimed at reaching agreement on the matter . . . that can be resolved without court intervention[.]" E.D. Mich. LR 7.1(a)(1). Although Defendants seek to compensate for the violation by withdrawing the aspect of the motion that concurrence would have resolved—the alleged lack of medical records supporting damages—this falls short of ameliorating the harm. Responding to that portion of the motion forced Plaintiff to incur costs to dispute the now-withdrawn Rule 56 motion. Local Rule 7.1(a)(3) provides that short of striking the motion, the Court may impose other sanctions for failure to seek concurrence, such as "taxing costs and attorney's fees."

Given the unnecessary work incurred by Plaintiff, the Court will award Plaintiff attorney's fees for the time spent crafting the section about failure to seek concurrence and responding to the alleged lack of medical records. *See* ECF No. 16, PageID.169–70, 175–76, 178. During the hearing, Plaintiff's counsel stated he spent less than an hour drafting the section about failure to concur. The Court estimates he likely spent

the same amount of time drafting the section responding to the lack of medical records. Considering a reasonable lodestar amount for this relatively straightforward work to be 2 hours at an average hourly civil litigation rate of $420,[4] the Court will require Defendants to reimburse Plaintiff's counsel for a total of $840.00.

**B. Fair Housing Act**

Turning to Defendants' motion to dismiss Plaintiff's claims under the Fair Housing Act ("FHA"), pursuant to 42 U.S.C. § 3617, it is unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section . . . 3604 . . . ." Section 3604(b), in turn, makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." The regulations enforcing this provision explain that it prohibits actions such as "[s]ubjecting a person to harassment because of race, color, religion, . . . or national origin that has the effect of imposing different . . . privileges relating to the sale or rental

[4] *See* State Bar of Michigan, *Attorney Income & Billing Rate Summary*, Econ. of L. 7 (2026), https://www.michbar.org/file/pmrc/pdfs/EOL_SurveyResults26.pdf [https://perma.cc/DY3V-PPLU].

of a dwelling or denying or limiting services or facilities in connection with the sale or rental of a dwelling." C.F.R § 100.65(b)(7).

Plaintiff alleges Defendants violated the Fair Housing Act, specifically "§ 3617, by way of § 3604(b)," by engaging in "coercion, intimidation, threats, or interference with" Ansara's full enjoyment of his rights secured by the FHA because of his race, national origin, and "presumed religion." Compl., ECF No. 1, ¶¶ 51–53.[5]

To state a claim under § 3617 "by way of § 3604(b)," a plaintiff must establish "(1) that he exercised or enjoyed a right guaranteed by [42 U.S.C. § 3604(b)]; (2) that the defendant's intentional conduct constituted coercion, intimidation, threat, or interference; and (3) a causal connection between his exercise or enjoyment of a right and the defendant's conduct." *Hood v. Midwest Sav. Bank*, 95 F. App'x 768, 779 (6th Cir. 2004). To prevail on an interference claim under § 3617, by way of a

[5] The Court notes that a *retaliation* claim (as opposed to interference claim) can also be brought under § 3617. Plaintiff confirmed during the hearing that he is not alleging retaliation under the FHA. While Defendants' conduct appeared to be in retaliation for Plaintiff's complaints at the HOA meeting(s), none of those complaints (or list of improvements) related to denouncing discrimination or other violations of the FHA. Plaintiff's complaints related to homeowners- and HOA-related issues such as how to best use HOA funds, which is not a protected activity under the FHA. *See Arnal v. Aspen View Condo. Ass'n, Inc.*, 226 F. Supp. 3d 1177, 1187–88 (D. Colo. 2016) ("To state a claim of retaliation under the FHA, the plaintiff must show that (1) he was engaged in protected activity; (2) he suffered an adverse action in the form of coercion, intimidation, threats, or interference; and (3) there was a causal link between the two.") (citation omitted).

disparate treatment claim under § 3604, "a plaintiff must [also] show proof of intentional discrimination." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 612, 613 (6th Cir. 2012) (citing *Mich. Prot. & Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 347 (6th Cir. 1994) (finding that § 3617 extends to "actors who are in a position directly to disrupt the exercise or enjoyment of a protected right and exercise their powers with a discriminatory animus")); *see also Brown v. Dominion Mgmt. Servs., LLC*, No. 23-3182, 2023 WL 5608861, at *1 (6th Cir. June 30, 2023) (citing *HDC, LLC*, 675 F.3d at 613–14) (noting that to state a claim under § 3604(b), the plaintiff "must allege, at a minimum, sufficient facts to support an inference that the defendant discriminated against [him] on the basis of one of [FHA's] protected classes"). Thus, the § 3617 question in this case is "whether the defendants coerced, intimidated, threatened, or interfered with [Ansara's] exercise or enjoyment of [his] right to inhabit [his subdivision unit] because of [his] race," national origin, or religion. *See Bloch v. Frischholz*, 587 F.3d 771, 782–83 (7th Cir. 2009).

The Complaint lists multiple actions by Defendants that allegedly "interfered" with Plaintiff's enjoyment of his subdivision unit. *See* Compl., ECF No. 1, PageID.10–13. Setting aside the question of whether these actions plausibly rise to the level of "coercion, interference, or intimidation" required under § 3617, Plaintiff must also plausibly allege that Defendants took those actions against Ansara *because* of his race, national origin, or religion. Although the complaint "need not present

'detailed factual allegations,' it must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference,' that [Defendants] 'discriminate[d] against [Ansara] with respect to [the] . . . terms, conditions, or privileges of [sale or rental of a dwelling, or in the provision of services or facilities in connection therewith], *because of* [his] race . . . or national origin." *See Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (citing *Iqbal,* 556 U.S. at 678–79) (emphasis in original) (noting that the *McDonnell Douglas* prima facie case is not a pleading requirement and that the ordinary rules for assessing the sufficiency of a complaint apply). "[B]road and conclusory allegations of discrimination cannot be the basis of a complaint and a plaintiff must state allegations that plausibly give rise to the inference that a defendant acted as the plaintiff claims." *HDC, LLC*, 675 F.3d at 614.

Plaintiff alleges that he is a person of Lebanese descent. Compl., ECF No. 1, ¶ 13. He does not specifically allege the race of each of the Defendants, though he alleges that "[t]he population of the subdivision is quite homogeneous, consisting almost entirely of Caucasian people of European origin." *Id.* at ¶ 18. He also alleges Defendants "have made life difficult in the subdivision for newly-arrived residents of the subdivision who are of a different race [or] national origin," *id.* at ¶ 19, warranting an inference that the Defendants, at the very least, are not of Middle Eastern decent.

In the complaint, Ansara asks this Court to enjoin the Defendants "from discriminating [against] Ansara because of race or national origin," ECF No. 1, PageID.14, but it is difficult to discern, from allegations in the Complaint, *what* precise discriminatory actions are the basis for this relief. Plaintiff must plausibly allege that Defendants' interference with his housing was motivated by Plaintiff's race or national origin. Simply making the conclusory allegation that "Defendants have all treated Ansara differently than other neighbors due to Ansara's race, national origin and presumed religion," *id.* at ¶ 22, is insufficient to plausibly allege discriminatory animus because it provides no specific facts supporting the alleged proposition.

Plaintiff does not offer any direct allegations of racially discriminatory animus against *him*. He only states that "Defendants have made derogatory comments to neighbors about Ansara," *id.* at ¶ 28, and Defendant Michael Leslie "deliberately mispronounced Ansara's last name in a derogatory tone of voice, after pronouncing it correctly many times before," *id.* at ¶ 29, without plausibly alleging that these derogatory comments and tone carried racial animus. It is just as possible that those comments were made for discriminatory purposes as it is possible they could have been made "to try to turn the neighbors in the subdivision against him," *id.* at ¶ 28, which is what Ansara explicitly alleged.[6]

---

[6] Moreover, while the Court does not consider statements outside the Complaint at the motion-to-dismiss stage, even the supplemental

Nonetheless, Ansara does allege examples of Defendants' discriminatory animus against *others*, which he argues warrants an inference that the Defendants created a hostile housing environment for him. For instance, Ansara alleges that:

> 20. Defendants Michael and Theresa Leslie have referred to African-American people as 'n******.'
>
> 21. Defendant McCormick has referred to people of Middle Eastern descent as 'damn Arabs,' and to a Jewish neighbor as a 'damn Jew boy.'
>
> 26. Several years ago, a family moved into the subdivision whose husband was White, the wife was Asian, and they had a baby. Defendants derogatorily referred to the wife as 'Ling Ling,' which was not her name, and to their child as 'Eggroll.' This family eventually moved out of the subdivision as a result of Defendants' conduct.
>
> 36. In September 2023, Defendant Theresa Leslie took photographs of the employees of a landscaper who was doing work at Ansara's property. She would not stop doing so when requested by the landscaper.

Compl., ECF No. 1.

---

exhibits attached to Plaintiff's Response do not include evidence of racial discriminatory animus by the Defendants directed against Ansara. One, for example, is a "derogatory comment" Ansara alleges McCormick made about him stating that "that damn guy is a crazy guy," which falls short of showing any racial animus. *See* Declaration of Frederick Lorenger ("Lorenger Decl."), ECF No. 16, PageID.189. Such a statement suggests McCormick did not like Ansara, but it does not plausibly suggest McCormick did not like him because of his race, as opposed to any other reason, perhaps, based on the context, because Ansara made suggestions to improve the subdivision which McCormick did not like or some other neighborly dispute.

While some courts have recognized a claim for "hostile housing environment" under § 3617 and 24 C.F.R. § 100.4009(b), they have still required that the conduct complained of be "sufficiently pervasive and severe" to establish liability. *Benvin v. City of Inkster*, No. 24-13424, 2025 WL 1662748, at *2 (E.D. Mich. June 12, 2025) (Behm, J.) (citing cases); *see also Taal v. Zwirner*, No. CIV. 02-131-M, 2004 WL 556709, at *8 (D.N.H. Mar. 22, 2004), *aff'd*, 117 F. App'x 775 (1st Cir. 2005) (noting that such claims also implicate balancing, to some extent, the claim of harassing conduct with the First Amendment rights of the defendants). In *Benvin*, the district court dismissed a § 3617 claim where the plaintiff had alleged that Defendant called *him* (not others) "racist" or "'white trash,' shouted other (nonspecific) 'racial slurs,' . . . played 'music in a loud manner at all hours of the day,'" and said he was "'tired of [Plaintiff's] white ass,' at unspecified times between 2020" and 2025. *Id.* The court held that these comments, "spread over five years[,] are insufficient to establish liability within the meaning of the Fair Housing Act" even considering a claim for "hostile housing environment" under § 3617. *Id.* at *2.

Here, while Defendants' comments about others (not himself) may suggest a hostile housing environment in which execrable racist attitudes were expressed, these statements pertaining to race or national origin are unconnected to any specific action or interference with *Ansara*'s housing rights. In fact, some of the statements were made "[s]everal

years ago," *before* Ansara moved into the subdivision, weakening the hostile environment claim. Even construing the allegation regarding McCormick's racially derogatory comment concerning other Middle Eastern neighbors in the light most favorable to Plaintiff, that sole undated comment may not rise to the level of "pervasive and severe" conduct sufficient to show discriminatory animus in Defendants' actions against Ansara personally under the FHA. *See Benvin,* 2025 WL 1662748, at *2.

And, the alleged racist comments about others in the past would make it *possible* that Defendants' conduct against Ansara was motivated by race, but not necessarily *plausible*. Plaintiff argues that these racist comments about others in combination with the Defendants' interference with his enjoyment of his property warrants an inference of discriminatory animus. But that reasoning is circular: Ansara argues the interference itself is circumstantial evidence of racial animus, but Ansara must plausibly allege that the interference was *motivated* by racial animus.

Ansara conclusively states that "Defendants have all treated Ansara differently than other neighbors due to Ansara's race, national origin and presumed religion." Compl., ECF No. 1, ¶ 22. But he fails to provide factual support for such a conclusion. *See HDC, LLC*, 675 F.3d at 613 ("The developers' vague and conclusory allegations that Ann Arbor acted with 'a discriminatory intent, purpose, and motivation' to prevent

handicapped people from living on the property do not transform the developers' otherwise insufficient factual pleadings into allegations that plausibly support an inference of discriminatory animus."). For certain allegations, Ansara does factually allege that he was "treated . . . differently than other neighbors." Compl., ECF No. 1, ¶ 30. But he does not plausibly allege he was treated differently *because of his race*, as opposed to for some other reasons, such as his complaints during HOA meetings, his gazebo, or other neighborly disputes.

All the HOA-meeting-related allegations suffer from the same conclusory aspect and lack of factual support warranting an inference of racially discriminatory animus. While he specifically alleges that he "was not allowed to present his suggestions [for improvement] during" the semi-annual HOA meeting on May 15, 2023, he also concedes that he spoke for "a few minutes" before being cut off. *Id.* at ¶ 31. While he alleges "no one else was limited in speaking at that meeting or any subsequent meetings of the HOA," *id.*, and concludes his speech limit was "prejudicially motivated," *id.* at ¶ 33, he provides no facts that would support a plausible allegation that he was cut-off because of *racial* animus against him, as opposed to time-management purposes, nor does he allege that other residents tried to speak for as long or longer than he did. *Cf. Cannon v. Home Source Detroit, LLC*, No. 13-11577, 2013 WL 6133274, at *8 (E.D. Mich. Nov. 21, 2013) ("Plaintiff alleges, in conclusory fashion, that defendants treated him differently than similarly situated

Caucasians. He does not, however, provide any specific factual allegations to support these bare assertions of discriminatory treatment."), *vacated in part on other grounds*, No. 13-2626 (6th Cir. May 16, 2014) (order); *see also Harris*, 2020 U.S. App. LEXIS 16735, at *9 ("[The Harrises have not identified these allegedly 'similarly situated' white neighbors."). Similarly, Ansara fails to plausibly allege that he was prevented from distributing his list of improvement suggestions to other neighbors (*see* Compl., ECF No. 1, ¶¶ 33–34) *because* of his race or national origin or that Defendants have allowed other similarly situated white residents to distribute similar documents in the manner Ansara intended.[7] *See Cannon*, 2013 WL 6133274, at *8; Harris, 2020 U.S. App. LEXIS 16735, at *9. In the same vein, Plaintiff fails to plausibly allege that the reason "his attorney was not allowed to speak on his behalf" and was "asked to leave at the beginning of the meeting" (Compl., ECF No. 1, ¶¶ 38–39) was because of Ansara's race, or that Defendants allowed attorneys to speak on behalf of similarly situated white residents during

[7] Again, while it may not be considered at the motion-to-dismiss stage, Plaintiff's declaration that he "had to create a disclaimer stating that [his] views do not reflect the HOA's views in order to redistribute this six-page document on the HOA Facebook Group Page" is also unconnected to any racial motivation. Ansara Decl., ECF No. 16, PageID.183. Without a plausible allegation that such requirement was racially motivated, it appears just as possible that Defendants did not agree with Ansara's suggestions and wanted to avoid giving the impression that his message came from the Board.

HOA meetings. *See Cannon*, 2013 WL 6133274, at *8; Harris, 2020 U.S. App. LEXIS 16735, at *9.

As to Ansara's allegation that Defendant McCormick singled him out when he demanded to see Ansara's boat title, even though "[o]ther neighbors have not been asked to show the HOA their boat titles," Compl., ECF No. 1, ¶ 35, Ansara did not allege that other *similarly situated white neighbors* have been treated differently, though he does allege the subdivision "consist[s] almost entirely of Caucasian people of European origin." *Id.* at ¶ 18. Nonetheless, while Ansara asks the Court to infer that McCormick's demand to see his boat title was racially motivated, he did not nudge that allegation beyond the realm of possibility, as it is just as possible that the Board reviewed other boat titles *before* Ansara moved into the subdivision, and he did not plausibly allege that similarly situated white neighbors who *recently* moved into the subdivision were not asked to show their boat title like he was.[8] *See*

[8] For example, another outside the complaint declaration offered by Plaintiff, the declaration of Seth Merle, attached to Plaintiff's Response, shows that sometime in 2021, about a year before Ansara moved into the subdivision, the HOA started to require boat owners "to have current boat registration," and that "[s]ome were 5-10 years expired," thereby contradicting Ansara's allegation that no other resident was asked for their boat registration, or that McCormick's request was racially motivated. *See* Declaration of Seth Merle ("Merle Decl."), ECF No. 17, ¶¶ 20–21. Though these facts cannot be considered as grounds for dismissing the Complaint, they further illustrate why the allegation in the Complaint, by itself, is insufficient.

*Cannon*, 2013 WL 6133274, at *8; Harris, 2020 U.S. App. LEXIS 16735, at *9.

Ansara further complains that "someone sabotaged [his] irrigation system for his landscaping." Compl., ECF No. 1, ¶ 37. He speculatively asserts that one or more of the Defendants did it, after Theresa Leslie took photographs of the landscaper doing work on Ansara's property in September 2023. *Id.* at ¶ 36. But while "there is no good explanation for [damaging Ansara's irrigation system], . . . there is also no good reason to infer that it was done because of [his] race." *See E.-Miller v. Lake Cnty. Highway Dep't*, 421 F.3d 558, 564 (7th Cir. 2005) (declining to infer racial animus from claim that snow was intentionally pushed into plaintiff's driveway).

Finally, Ansara alleges that Defendants made police reports against him which were false or about trivial incidents, Compl., ECF No. 1, ¶ 40, and made a zoning report to the City of Wixom about his concrete pad and gazebo, *id.* at ¶ 42, even though the affected neighbor did not object and similar structures have been allowed in other homes without being reported to the City, *id.* at ¶ 43. Here again, Ansara fails to plausibly allege these reports were racially motivated,[9] as opposed to

[9] While the complaint contains many undated allegations, Ansara's own declaration—which again the Court cannot consider at the motion-to-dismiss stage—indicates that Defendant Winters made a report to the City of Wixom about Ansara's concrete pad and gazebo causing a zoning issue "the same evening as the May 2023 HOA meeting." Ansara Decl., ECF No. 16, PageID.185. This timing suggests that the report was made

being made for other valid reasons and fails to identify similarly situated neighbors who are white, have the same structures, placed in the same way on their properties, but who were not reported.

From the facts in the Complaint, it is just as possible to conclude that the Board bore animus against Ansara because he complained and suggested improvements that were not welcome. In *Harris v. Cooley*, the Sixth Circuit affirmed the dismissal of FHA claims based on §§ 3604 and 3617 for failure to "allege sufficient facts . . . to show that the defendants acted with discriminatory animus." 2020 U.S. App. LEXIS 16735, at *7. The appellate court explained that:

> Beyond alleging that they are African American and that the defendants are Caucasian, the Harrises have not sufficiently alleged that the defendants' purported hostile actions, which are described above, were based on the Harrises' race. Instead, the chief cause of the dispute among the parties appears to relate to the Harrises' privacy fence, which the Cooleys contend is illegal. . . . [T]he alleged facts confirm the existence of no more than a neighbor-against-neighbor quarrel over a disputed property line. . . .
>
> They primarily claim that they have been discriminated against on the basis of their race in that the Cooleys . . . (2) complained to the city about weeds . . . but did not complain to the city about six other 'similarly situated' white neighbors who allegedly also placed weeds and tree limbs in the same alley. . . . [A]bout their weed-and-tree-limb accumulation in an alley[,] . . . [t]he Harrises have not identified these allegedly 'similarly situated' white neighbors. Moreover, they

---

in response to Ansara's comments during the HOA meeting, as opposed to racial animus.

> have not alleged any facts suggesting that the Cooleys singled them out because of their race, as opposed to the ongoing dispute about their privacy fence—i.e., the chief issue of which they complain. . . .
>
> In short, although the Harrises' complaint is replete with allegations of actions taken by defendants, it is devoid of 'any factual allegation sufficient to plausibly suggest [the defendants'] discriminatory state of mind.'

*Id.* at *7–10 (citations omitted).

Similarly here, Ansara has not nudged the conclusory allegations of racial animus beyond the realm of possibility required to survive a motion to dismiss. Although Ansara's complaint is "replete with allegations of actions taken by [D]efendants," he has not alleged sufficient facts suggesting that they "singled [him] out because of [his] race, as opposed to the ongoing dispute about" his concrete pad and gazebo, *see* Compl., ECF No. 1, ¶ 42, or his apparently unwelcomed suggestions for improvements to the Board, *see id.* at ¶¶ 31–34.[10] *See Harris*, 2020 U.S. App. LEXIS 16735, at *10; *Bloch*, 587 F.3d at 783 (noting that "'[i]nterference' is more than a 'quarrel among neighbors'"); *United States v. Weisz*, 914 F. Supp. 1050, 1054 (S.D.N.Y. Feb. 13, 1996) (dismissing the plaintiff's § 3617 claim where the

[10] While the Court cannot consider the alleged counter-claims at this juncture, as in *Harris*, Defendants also appear to dispute the propriety of Ansara's white plastic privacy fence "blocking the Leslies' view of the lake." Counter-Compl., ECF No. 3, PageID.59, ¶¶ 13–14.

defendant's alleged conduct was "nothing more than a series of skirmishes in an unfortunate war between neighbors").

That Defendants are alleged to have exhibited general attitudes of racism or prejudice based on their comments set forth in the Complaint, or that they have taken actions against Ansara, is not sufficient to make out a Fair Housing Act claim unless facts are alleged showing the conduct is motivated by animus against one of the Act's protected classes. Without plausible allegations of discrimination based on Ansara's race, national origin, or religion, Plaintiff's § 3617 claim "by way of § 3604(b)" cannot stand. For all of the above reasons, therefore, Plaintiff's Fair Housing Act count must be **DISMISSED** for failure to state a claim.

### C. Supplemental Jurisdiction

Under 28 U.S.C. § 1367(c), the Court "'may' (rather than must) decline to exercise [supplemental] jurisdiction" over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996), *amended on denial of reh'g*, No. 95-5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998); *accord Artis v. District of Columbia*, 583 U.S. 71, 74 (2018) ("When district courts dismiss all claims independently qualifying for the exercise of federal jurisdiction, they ordinarily dismiss as well all related state claims."). The "decision depends on 'judicial economy, convenience, fairness, and comity.'" *Musson Theatrical, Inc.*, 89 F.3d at 1254. The Sixth Circuit noted that, "as a rule of thumb, . . . [w]hen

all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Id.* at 1254–55. The same reasoning applies to state law counterclaims. *See, e.g.*, *RJ Control Consultants, Inc. v. Multiject, LLC*, 2023 U.S. Dist. LEXIS 112060, *2 (E.D. Mich. May 23, 2023) ("The Court finds that the prudent course under the circumstances is to decline the discretionary exercise of supplemental jurisdiction over the remaining purely state law counterclaim.") (Lawson, J.).

The instant case was removed from the Oakland County Circuit Court on September 9, 2024. ECF No. 1. This Court had original jurisdiction over Plaintiff's federal Fair Housing Act claim, and supplemental jurisdiction over Plaintiff and Defendants' state law claim and counterclaims. The parties have not presented any basis for diversity jurisdiction. Having dismissed Plaintiff's federal claim, all that remains of this lawsuit are Plaintiff and Defendants' state law claim and counterclaims against each other for intentional infliction of emotional distress, as well as Defendants' state law claim against Plaintiff for violation of the subdivision's "Declaration of Restrictions." ECF Nos. 1 & 3. Thus, the Court declines to exercise supplemental jurisdiction over the remaining state law claim and counterclaims given the dismissal of the only federal claim. Consequently, the motion to dismiss the state law

claims is **DENIED**. The state law claim and counterclaims will be **REMANDED** to the Oakland County Circuit Court.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED IN PART and DENIED IN PART**.

It is **HEREBY ORDERED** that Plaintiff's federal Fair Housing Act claim is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

It is **FURTHER ORDERED** that Plaintiff's state law claim and Defendants' state law counterclaims are **REMANDED** to the Oakland County Circuit Court.

It is **FURTHER ORDERED** that Defendants shall pay $840.00 in attorneys' fees to Plaintiff for failure to seek concurrence.

This Order closes the case.

**SO ORDERED.**

Dated: October 2, 2026

/s/Terrence G. Berg
HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE